**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
JOHN BURKE,

                          **Petitioner,**

  - against -

JOHN T. SMITH,

                         **Respondent.**
--------------------------------------------------------x

**07-cv-3098 (NG)**
**OPINION AND ORDER**

JUN 2 1 2012

GERSHON, United States District Judge:

      John Burke is incarcerated on his conviction in New York State Supreme Court, Queens County, for Murder in the Second Degree. Acting *pro se*, he petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Burke alleges that he is in custody in violation of the Constitution of the United States and raises four grounds for relief: (1) the prosecutor failed to disclose material as required under *Brady v. Maryland*, 373 U.S. 83 (1983); (2) his trial counsel was ineffective; (3) the prosecutor's misconduct deprived him of due process and a fair trial; and (4) the trial court's denial of a motion to sever violated his right to due process and a fair trial. For the reasons set forth below, the petition is denied.

## BACKGROUND

### I.    State Trial Court Proceedings

      In 2001, Burke was indicted on four counts of Murder in the Second Degree, N.Y. Penal Law § 125.25[1], [2]; Reckless Endangerment in the First Degree, N.Y. Penal Law § 120.25; Criminal Possession of a Weapon in the Second and Third Degrees, N.Y. Penal Law §§ 265.03[2], 265.02[4]; Assault in the Second Degree, N.Y.

Penal Law § 120.05[6], and Criminal Solicitation in the Second Degree, N.Y. Penal Law § 100.10.

The jury found Burke guilty of Murder in the Second Degree for the death of Bruce Gotterup in 1991. It also found him guilty of Criminal Solicitation in the Second Degree for soliciting the murder of John Brancaccio, a/k/a Johnny Bandana, in 2000. The jury acquitted him of the charges related to the murder of John Gebert in 1996. The court sentenced Burke to an indeterminate prison term of twenty-five years to life but dismissed the criminal-solicitation count as jurisdictionally defective.[1]

Burke was tried in the Supreme Court of New York, Queens County (Eng, J.). The State presented evidence showing that Bruce Gotterup was shot five times in the back of the head in Far Rockaway, Queens in November 1991. To prove that Burke killed Gotterup, the prosecution relied on two principal witnesses, Bruce Vackner and Damian Rios. As is relevant to the Gotterup murder, Vackner testified that he asked an associate, Joseph Lampasona, to steal a car for Vackner to use the night of the murder and to deliver it to Vackner's house. Vackner told Lampasona to use gloves during the theft. Lampasona dropped off the car at Vackner's house in the hours before the murder. Vackner, Burke, and Burke's brother-in-law, Juan Acevedo, planned to get Gotterup drunk at a bar, drive him away, and shoot him. At the last minute, Vackner stayed behind, and Burke drove off in the stolen car, followed by Acevedo. The next day, responding to a beeper page from Burke,

---

[1] Burke also moved to set aside the verdict pursuant to Section 330.30 of the New York Criminal Procedure Law. The motion was later withdrawn.

2

Vackner went to Burke's house. Burke told him, in sum, that they were going to a funeral and that Gotterup had been "taken care of."

Rios' testimony corroborated that Burke killed Gotterup. Cooperating with the police, Rios elicited information from Burke in prison about the Gotterup murder. Rios testified that Burke told him that he and Acevedo had taken Gotterup to Rockaway Beach and "left him there." Both Rios and Vackner had lengthy and serious criminal records and each received substantial benefits in return for his testimony.

Other testimony established motive. Michael Stratton testified that Gotterup was dealing cocaine at the Jaegermeister Bar and that there was a dispute between Burke and Gottterup. Debbie Gotterup, Bruce Gotterup's wife, testified that in early November 1991, Burke went to Gotterup's home, pulled out a gun, pointed it at Gotterup's head, and said, "I can blow you away right here." The police officer who discovered Gotterup's body testified that he recovered a loaded gun from Gotterup's body and medical evidence demonstrated that Gotterup had been shot from behind at close range.

## II.    Post-Trial Information

After trial, Burke learned that Lampasona had been interviewed by the prosecutor's office prior to trial. Although Lampasona's name appeared on the State's pre-trial witness list, neither party called him to testify. Burke obtained an

affidavit from Lampasona discussing the interview and his knowledge related to the case.[2]

In his affidavit, Lampasona confirmed that he stole "maybe ten [ ] cars total" for Vackner and brought "those cars to a location in East New York." He stated that two of these cars had the vehicle identification numbers altered and that Vackner kept these cars for his personal use. He also stated, "At no time was I ever asked by Bruce Vackner to steal a car, to use gloves to steal a car on behalf or for John Burke." He did not say that he did not deliver a stolen car to Vackner's house on the day of Gotterup's murder.

Richard Schaeffer, the prosecutor who interviewed Lampasona prior to trial, stated in his affidavit that Lampasona initially acknowledged stealing a number of cars for Vackner during the period of Gotterup's murder and dropping "most of them" off at a chop shop in Brooklyn. Lampasona also stated that he had stolen a couple of cars for Vackner's personal use. Lampasona "stated that he could not recall where he dropped off those cars that he did not leave in Brooklyn." Lampasona told Schaeffer that he did not remember delivering any cars to Vackner's house, but "he would not deny that that could have happened." Lampasona also told Schaeffer that "Bruce Vackner never told him to wear gloves." After Schaeffer asked Lampasona whether he would repeat those statements in open court, Lampasona

> changed his statement. He then declared adamantly that he had never dropped off a car at Bruce Vackner's house . . . . Mr. Lampasona's

---

[2] This affidavit and Richard Schaeffer's affidavit were submitted in connection with Burke's 330.30 motion.

uncooperative tone became palpable, and it was clear to me, and I believe to everyone else in the room, that Mr. Lampasona was now saying what he thought he needed to say to avoid being called as a witness in a murder trial.

Schaeffer Aff. ¶ 8.   The State did not disclose the substance of Lampasona's statements to the defense prior to trial.

## III.   State Court Post-Conviction Proceedings

Burke appealed his conviction to the Appellate Division, Second Department. He raised four claims of error, two of which are relevant here.  First, Burke argued that the introduction of evidence of his criminal propensity and uncharged crimes deprived him of a fair trial.  He also argued that the trial court's denial of a motion to sever the charges violated his right to a fair trial.

The Appellate Division affirmed Burke's conviction.  The court determined these arguments either had not been preserved on appeal or lacked merit.  *People v. Burke*, 22 A.D.3d 862 (2d Dep't 2005).  The Court of Appeals of New York denied leave to appeal.  *People v. Burke*, 6 N.Y.3d 774 (2006).

Before his direct appeal was resolved, Burke, via counsel, moved the Supreme Court, Queens County, to vacate his conviction under Section 440.10 of New York Criminal Procedure Law.  As is relevant here, Burke argued that the State failed to meet its obligation to timely disclose favorable, material evidence under *Brady*—specifically Lampasona's pre-trial statement—which, he argued, would have created irreconcilable conflicts with Vackner's testimony.

In a parallel motion, made *pro se*, Burke argued, as relevant here, that his trial counsel was ineffective because counsel failed to: (1) interview Lampasona

5

prior to trial; (2) present testimony of witnesses that conflicted with Vackner's testimony, including the testimony of John Gorman, who claimed to see Gotterup leave the bar alone on the night he died; (3) impeach Vackner with police reports indicating Burke had not been with Gotterup the night of the murder; and (4) cross-examine Vackner about inconsistencies in his testimony, including testimony in which he claimed to have socialized with Burke during a period in which Burke was incarcerated. Burke included an affidavit from his trial counsel confirming that counsel had not performed these actions and that he had no strategic reason for not doing so. Burke also attached an affidavit from Acevedo stating that Acevedo was a drug addict living on the street at the time of Burke's trial and avoided contact with his family. In the affidavit, Acevedo stated that, had he testified at trial, he would have denied that he had any involvement in the murder.

The trial court denied Burke's motions as lacking merit. The court ruled, among other things, that Burke's trial counsel had represented Burke competently and thoroughly in motion practice, and zealously and vigorously at trial. *See People v. Burke*, No. 1371/01, slip op., at 8 (Sup. Ct. Queens County Aug., 19, 2005). The court noted counsel's "strong opening statement," which presented an alibi defense to the Gebert murder, "thorough[]" cross-examinations, and presentation of two witnesses on direct. *Id.* The court also described counsel's "well[-]argued summation" that "challenged the credibility of the People's witnesses, underscored the weaknesses in the prosecution's case, and asserted that there was an absence of credible evidence linking [Burke] to the murders." *Id.* The court noted that "[s]o

long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met." *Id.* at 7 (citing *People v. Baldi*, 54 N.Y.2d 137, 147 (1981)). The court found "no showing that the result of the trial would [have been] different had trial counsel proceeded differently." *Burke,* No. 1371/01, slip op., at 7-8.

With respect to Burke's *Brady* claims, the court stated that, in order for the defendant to establish a *Brady* violation, he would need to show that the evidence was either exculpatory or impeaching, and thus favorable to the accused, and that its suppression by the State was prejudicial to the defendant. *Burke*, No. 1371/01, slip op., at 9. The court cited *Strickler v. Green*, 527 U.S. 263 (1999), and *Giglio v. United States*, 405 U.S. 150 (1972). *Id.* The court noted that evidence would be considered "exculpatory and materially important to the defense . . . only if there is a 'reasonable possibility' that had it been disclosed to the defense, the verdict would have been different." *Id.* at 9. With respect to the State's failure to disclose Lampasona's prior statement to police, the court ruled that

> [a]lthough Lampasona cannot recall stealing a car on behalf of [Burke] the day of the killing, and claims that he had no knowledge of the conspiracy to murder Gotterup, this does not contradict Vackner's testimony. There is no reasonable possibility that Lampasona's testimony, had he been available, would have affected the verdict, even though he might have testified as to inconsistencies in Vackner's testimony.

*Id.* at 10-11. The court also found that the prosecutor's denial of misconduct was credible, *id.* at 12, and that Burke's other claims of misconduct were "lacking in

credibility." *Id.* at 13. Burke applied in the Appellate Division, Second Department, both through counsel and *pro se*, for leave to appeal the § 440.10 motions. Leave was denied.

## DISCUSSION

Burke filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He now argues that: (1) the prosecutor failed to disclose material as required under *Brady*, 373 U.S. 83; (2) his trial counsel was ineffective (on some of the grounds he argued in state court); (3) the prosecutor's misconduct deprived him of due process and a fair trial; and (4) the trial court's denial of a motion to sever violated his right to due process and a fair trial.

### I.     Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, a federal court may grant an application for a writ of habeas corpus on behalf of any person in custody pursuant to a state court judgment with respect to a claim that was "adjudicated on the merits" only if it concludes that the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This standard is "difficult to meet . . . and highly deferential." *Parker v. Matthews*, 567 U.S. \_\_\_, \_\_\_, 2012 WL 2076341, \*2 (June 11, 2012) (quoting *Cullen v. Pinholster*,

563 U.S. ___, ___, 131 S. Ct. 1388, 1391 ( 2011)).  Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). An adjudication "on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir. 2001) (internal citation omitted).

The Supreme Court has instructed that "clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to . . . clearly established precedent" if it "contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405-06. A decision is "an unreasonable application" of established federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. In other words, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," but rather, "that application must also be unreasonable." *Id.* at 411. The Court of Appeals for the Second Circuit has refined this standard, holding that, while "some increment of incorrectness beyond error is required[,] . . . the increment need not be

great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

The Second Circuit has directed federal courts to address a habeas claim on the merits when the state appellate court held a claim to be "either unpreserved for appellate review or without merit." *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006). Therefore, an appellate court's ruling on such grounds is entitled to § 2254(d) deference.

## II.  *Brady* Claim

Burke argues that the prosecutor's failure to disclose Lampasona's prior statements to prosecutors is a violation of *Brady* because counsel could have used the favorable statements to impeach Vackner's testimony. As discussed above, Burke's counsel raised this claim in his § 440 motion to the state court, which rejected the argument. Therefore, this court is required to defer to the state court's findings and conclusions under AEDPA unless Burke shows that the ruling was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Under *Brady* and its progeny, a violation of federal due process rights will be found when three factors are met: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82; *see United States v.*

*Bagley*, 473 U.S. 667, 674-75 (1985); *Giglio*, 405 U.S. at 154. The government's obligation to disclose evidence under *Brady* "extends only to favorable evidence that is material." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995). The *Brady* cases require disclosure of material impeachment evidence known to the prosecution, whether requested or not. *Strickler*, 527 U.S. at 280-81. Impeachment evidence is material, for *Brady* purposes, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quoting *Bagley*, 473 U.S. at 682). A reasonable probability here means "a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Thus, a conviction where impeachment material was withheld will be reversed "only 'if the omitted evidence creates a reasonable doubt that did not otherwise exist.'" *United States v. Petrillo*, 821 F.2d 85, 88 (2d Cir. 1987) (citing *United States v. Augers*, 427 U.S. 97, 112 (1976)).

In *Petrillo*, the Second Circuit addressed a cooperating witness who provided primary evidence of ownership against a co-owner of a diet clinic that fronted for a Quaaludes distribution network. *Id.*, 821 F.2d at 86-7. On cross-examination, the cooperator was impeached regarding the timing of a bankruptcy petition and his indictment and guilty plea. *Id.* After the defendant was found guilty, the United States Attorney's Office discovered documents that would have, if successfully introduced at trial, provided "*additional* evidence tending to *further* impeach the credibility of [the corroborator] whose character had already been shown to be

11

questionable . . . ." *Id.* at 87, 89 (emphasis in original) (citing *United States v. Rosner*, 516 F.2d 269, 273-75 (2d Cir. 1975)). The Second Circuit affirmed the denial of defendant's motion for a new trial, ruling that "the documents in question were merely additional evidence tending to undermine the credibility of [the cooperator] for reasons already before the jury." *Petrillo*, 821 F.2d at 89. The court noted that key aspects of the cooperator's testimony were corroborated by other evidence, and that this was not a case "where the witness whose credibility was at issued supplied the only evidence linking the defendant(s) to the crime." *Id.* at 90.

Burke argues that Lampasona's prior statements are favorable to him because they impeach Vackner's testimony. In his affidavit, Lampasona said, "At no time was I ever asked by Bruce Vackner to steal a car, to use gloves to steal a car on behalf or for John Burke." Burke argues that Lampasona's testimony would have thrown into doubt two issues: 1) whether Vackner asked Lampasona to wear gloves when Lampasona stole the car on the night of Gotterup's murder, and 2) whether Lampasona dropped the car off at Vackner's house on the same night. Burke argues that, unlike Vackner, Lampasona neither would have stood to gain from testifying in the case nor was charged with any crime related to the murder and thus, the jury would have found him more credible than Vackner.

The State does not dispute that Lampasona's statements were not disclosed. It is impossible now to know what Lampasona would have said had he testified at trial. Therefore, I look to the affidavits of Schaeffer and Lampasona as the best proxy for what Burke might have gained by Lampasona's testimony.

12

As an initial matter, in light of the variation between answers that Lampasona gave to the prosecutor and his own affidavit, there is doubt as to what Lampasona's testimony would have been at trial. Furthermore, Lampasona's statements in his affidavit that he never met Burke, was never asked to steal a car on behalf of John Burke, or that he had "no knowledge of this crime or conspiracy to commit this crime against Bruce Gotterup in November 1991" do not contradict Vackner. Lampasona's affidavit does not say that he did not deliver a car to Vackner's house. And the jury would have had questions about Lampasona's own creditworthiness given that he acknowledged that he stole a number of cars.

Even assuming that he would have testified that Vackner had not asked him to wear gloves and that he had not delivered a car to Vackner's house, his testimony, though conflicting with Vackner's, would not have been material because defense counsel had already called Vackner's credibility into question as a result of his past criminal convictions and the significant benefits he received from the State in return for his testimony. Among other things, as Burke himself points out, the jury heard testimony that Vackner received several favorable transfers while in prison and a letter from police to the parole board recommending parole in exchange for his testimony. He testified, "I'm here because my parole officer gave me no other choice, and I was served with a subpoena this morning." *See Payne*, 63 F.3d at 1210 (suppressed impeachment evidence generally not material when it "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable").

Moreover, any factual inconsistencies in the details about the gloves and the location of the car drop-off did not involve facts that were central to Burke's conviction. These details concerned Vackner's procurement of a stolen car, not Burke's planning for and execution of Gotterup's murder. Also, Burke's involvement in the murder was corroborated by Rios's testimony that Burke said he took Gotterup to Far Rockaway and "left him there," and by Debbie Gotterup's testimony that, not long before the murder, Burke had held a gun to her husband's head and told him that he could "blow [him] away right there." For these reasons, Lampasona's undisclosed statements were not materially favorable to Burke, and, therefore, the State's failure to disclose them did not violate *Brady*.[3]

The state court's order on Burke's § 440 motion expressly applied *Brady* and did so in a way consistent with established Supreme Court precedent. After analyzing Burke's *Brady* claim, the court held that "[t]here is no reasonable possibility that Lampasona's testimony, had he been available, would have affected the verdict, even though he might have testified as to inconsistencies in Vackner's testimony." Because I find that the state court's ruling on this issue is not contrary

---

[3] Burke argues that the state court unreasonably determined facts related to Lampasona's statement, citing 28 U.S.C. § 2254(d)(2). In its order on Burke's § 440 motion, the court wrote that Lampasona could not "recall stealing a car on behalf of [Burke] the day of the killing," but Burke asserts there is no evidence in support of this statement. Burke claims that Lampasona says, rather, that Lampasona began stealing cars for Vackner when he was about 15, and that he would bring them to a location in East New York. As the state court noted, however, even this testimony would not contradict Vackner's trial testimony because Vackner did not testify that he told Lampasona that he would be stealing the car for Burke or what the intended purpose was. Furthermore, Lampasona made equivocal statements as to whether he had ever delivered a car to Vackner's house, which would have affected the credibility of Lampasona's own testimony. Therefore, regardless of the court's resolution of facts in the § 440 motion, Burke has not shown that the facts, if taken as he asserts them, would have been material to Vackner's impeachment.

to, or an unreasonable application of, Supreme Court precedent, Burke's *Brady* claim fails.

## III.   Ineffective Assistance of Counsel Claim

To be granted relief for the ineffective assistance of counsel, a petitioner must show both that his attorney's performance "fell below an objective standard of reasonableness" and that there is a "reasonable probability that but for counsel's unprofessional error[s], the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694.   If a petitioner fails to satisfy either prong of *Strickland,* he is not entitled to habeas relief based on ineffective assistance of counsel. *See Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005).   And "[w]hen a federal court reviews a state decision under § 2254, '[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (quoting *Knowles v. Mirzayance*, 566 U.S. 111, 123 (2009)).

Burke argues that his counsel failed to call three witnesses—Lampasona, Acevedo, and Gorman—each of whom would have cast doubt on aspects of the State's case.   He also claims that his trial counsel failed to impeach Vackner with prior inconsistent statements.

As discussed above, even if Lampasona had testified at trial, there is no reasonable probability that the result of the proceeding would have been different.

Therefore, counsel's failure to investigate or call him at trial cannot amount to prejudice.

Acevedo's affidavit stated that, at the time of the trial, he was living on the street and avoiding contact with his family. Burke conceded in his *pro se* § 440 motion that Acevedo could not be found at the time of trial; therefore, counsel's failure to locate him does not rise to the level of deficient performance.

Counsel's failure to call Gorman does not give rise to prejudice because Gorman's statement that he saw Gotterup leave the bar alone does not conflict with Vackner's trial testimony.

Finally, Burke's contention that his trial counsel did not effectively impeach Vackner with prior inconsistent statements is incorrect. Burke's counsel impeached Vackner over two of these statements, and the third statement—inconsistent statements regarding whether he and Burke travelled to Vackner's house together—is not material. And I note that, as discussed above, the jury had many other grounds on which to question Vackner's credibility.

As described *supra* at pp. 6-7, the state court—the same judge who presided over the trial—evaluated trial counsel's performance under the standard set forth in *Baldi*: "So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met." *Burke*, No. 1371/01, slip op., at 7 (citing *People v. Baldi*, 54 N.Y.2d 137). In *Baldi*, the New York State Court of Appeals expressly applied the right to effective

16

assistance of counsel guaranteed by the federal Constitution. 54 N.Y.2d at 146. The Second Circuit has endorsed this standard as satisfying the concerns raised in *Strickland*. *See Rosario*, 601 F.3d at 125. In this case, the court positively evaluated trial counsel's performance in motion practice and at trial, including noting counsel's "strong" opening statement, cross-examinations, and direct examinations. In a "well argued" summation, the court noted, counsel "challenged the credibility of the People's witnesses, underscored the weaknesses in the prosecution's case, and asserted that there was an absence of credible evidence linking [Burke] to the murders." *Burke*, No. 1371/01, slip op., at 7-9. Because I find that the state court's ruling on this issue is not contrary to or unreasonable in light of Supreme Court precedent, Burke's ineffective assistance of counsel claim fails.

## IV.    Claim of Prosecutorial Misconduct

Burke next argues that numerous acts of prosecutorial misconduct so infected the trial court proceedings that his entitlement to a fair trial was violated. Burke includes in this claim of misconduct allegations that during the trial: (1) the prosecutor accused the defendant of continuing to engage in drug trafficking; (2) the prosecutor improperly shifted the burden of proof by suggesting that Burke and his mother should testify; (3) the prosecutor improperly introduced evidence of drug trafficking occurring post-July 12, 1996; and (4) the prosecutor called Burke a "sewer rat" during summation. I address arguments (1) and (3) together below.

Burke made these arguments to the state appellate court in his direct appeal. The Appellate Division rejected this claim as either unpreserved for appellate

17

review or without merit. *Burke*, 22 A.D.3d 862. As noted above, the Appellate Division's ruling is entitled to deference under 28 U.S.C. § 2254(d). *See Jimenez*, 458 F.3d at 146 (federal district courts are to address habeas claims on the merits when state court holds claim to be "either unpreserved for appellate review or without merit").

"The 'clearly established Federal law' relevant here is [the Supreme Court's] decision in *Darden v. Wainwright*, 477 U. S.168 (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker*, 567 U.S. at ___, 2012 WL 2076341, *5 (internal quotation marks omitted). "'Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.'" *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004) (citing *United States v. Young*, 470 U.S. 1, 11-12 (1985)). "When considering whether an improper comment caused the defendant prejudice, we consider three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." *Id.* at 245. A petitioner seeking to overturn a conviction based on inappropriate prosecutorial comments faces substantial hurdles. "To prevail on his claim, [petitioner] must demonstrate that, absent the misconduct, he would not have been convicted." *Id.*; *United States v. Elias*, 285 F.3d 183, 192 (2d Cir. 2002).

Burke argues that the prosecutor accused the defendant of continuing to engage in drug trafficking during the trial when the prosecutor questioned Burke's brother, as follows:

Q:   You don't want to see your brother go to jail; is that fair?
A:   Of course not.  Any family member [sic] I wouldn't want that.
Q:   Of course, if that happens that would make it more difficult for the proceeds of the drug transactions to keep going?
A:   I have no idea.

Burke also argues that the prosecutor improperly introduced other evidence of drug trafficking occurring post-July 12, 1996.

In pre-trial rulings, the trial court precluded the State from "developing" testimony about drug transactions following Gebert's murder on July 12, 1996.  But in none of Burke's examples of improper questioning did Burke's lawyer object, either on the basis of the pre-trial ruling or any other grounds.  *See Malley v. Manson*, 547 F.2d 25, 28 (2d Cir. 1976) ("The absence of contemporaneous objections or requests for cautionary instructions are factors to be taken into consideration."). The court later modified its initial ruling to allow the State to introduce some evidence of prior crimes to illustrate to the jury Burke's relationship with other witnesses.  At least with respect to Burke's brother, the prosecutor did not elicit this testimony during the State's case-in-chief, but rather on the brother's cross-examination.  Furthermore, the court specified in its final charge that the jury was to ignore evidence of criminal propensity and to consider the evidence only to understand Burke's relationship to several witnesses.  The court said:

During the course of this trial, the People have introduced evidence that on numerous prior occasions this defendant John Burke has

19

allegedly committed and participated in criminal activities, to wit: drug dealing, robberies, extortion, assault and illegal weapons possession.

As with all the testimony, it is for you the jury to assess the credibility of the individual witness and then afford to the evidence the weight you believe it deserves. The fact that this defendant has allegedly engaged in criminal activities in the past is no proof whatsoever that he possessed a propensity or disposition to commit the crimes charged in this indictment . . . . It is not offered for such purpose and must not be considered by you for such purpose.

Instead the People offered evidence of prior criminal activities on the part of the defendant John Burke solely for the purpose of giving you background evidence to help you understand the alleged relationship of the parties, that is John Burke and several of the witnesses that testified at this trial and to help you to understand the factual context of certain alleged confessions and/or admissions allegedly made by the defendant to those witnesses. I charge you such evidence may be considered by you only for such limited purpose and for none other. Repeating these alleged prior bad acts were not admitted and should not be considered by you to demonstrate any propensity on the part of Mr. Burke to commit any one or more of the crimes charged in this indictment. Such evidence was admitted solely to assist you the jury in assessing the credibility of the witnesses to the extent the evidence reflected the alleged relationships between the witnesses and the defendant.

Finally, Burke was acquitted of the charges relating to Gebert's death. In light of this and the state court's limiting instructions, I am not persuaded that the court's rejection of Burke's argument regarding post-July 12, 1996, drug trafficking, including ongoing drug trafficking at the time of trial, was contrary to, or an unreasonable application of, Supreme Court precedent. *See Parker*, 567 U.S. at ___, 2012 WL 2076341, *9 (improper comments must so infect trial with unfairness as to violate due process).

Burke argues that the prosecutor improperly shifted the burden of proof by suggesting in a question to a witness that Burke and his mother should testify regarding his alibi for the Gebert murder. The State concedes the question was improper. However, the trial court sustained Burke's objection and immediately cured the impropriety by reminding the jury that "[t]he defendant has no obligation or responsibility to prove anything[,] including his non-guilt. Once again, the defendant doesn't have to do anything in particular under our system of justice." This admonition to the jury cured the improper question. In any event, Burke was acquitted of the Gebert murder. Under the circumstances, the cured prosecutorial error could not have caused prejudice to Burke.

With respect to Burke's argument that the prosecutor improperly called him a sewer rat, the state court's determination that this remark does not amount to prosecutorial misconduct is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. In summation, the prosecutor said:

> There is a person in this courtroom who did select the witnesses in this case and that's the defendant John Burke, because these are people who worked for him, who were partners with him, who were competitors with him. These are the people who lived in his world and if you want to find out what's going on in the sewer, you talk to the rats.

Reading the remark in context makes clear that the prosecutor was explaining why the jury should believe the testimony of some of the witnesses in this case, even though they were convicted criminals. *See Perez v. Miller*, 2009 WL 1044629, *11 (E.D.N.Y. 2009). Furthermore, defense counsel did not object to the remark at the trial. In sum, Burke's claim of prosecutorial misconduct is rejected.

## V. Claim of Improper Denial of Severance Motion

Burke next argues that the state court's denial of his motion to sever the charges in his indictment into three trials violated his fair-trial rights. Burke argues that, had his trial been severed, the jury would not have heard evidence—specifically, four witnesses and other related testimony—relevant to other shootings, including the Gebert murder, or evidence related to the solicitation-to-murder charge.

Burke's severance motion, made pursuant to New York CPL § 200.20(3), was denied in a pre-trial ruling, renewed on the first day of trial, and again denied. The ruling was affirmed on Burke's direct appeal as "either unpreserved for appellate review or without merit," *Burke*, 22 A.D.3d 862, and therefore, is entitled to deference.

Joinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial. *See Spencer v. Texas*, 385 U.S. 554, 562 (1967). Misjoinder rises to "the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). A petitioner claiming a "due process violation based upon joinder of offenses . . . must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial." *Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993) (emphasis in original). "[T]he

potential for prejudice arising from joinder of offenses is insufficient to warrant reversing a presumptively valid state court conviction." *Id.* at 379.

In *Herring*, the defendant faced two informations, one charging murder and felony murder, and the other charging murder and conspiracy to commit murder. *Id.* at 376. A single witness was common to both murders. *Id.* Defendant moved to sever, arguing that he would face additional witnesses in the conspiracy charge who would otherwise be irrelevant to the other information, and who would bolster the credibility of the common witness with respect to both murders. *Id.* The trial court denied the motion and instructed the jury on three occasions that the crimes charged were independent of one another. *Id.* The jury returned a verdict of felony murder and accessory to murder, but acquitted on the other murder and conspiracy charges. *Id.* at 377.

The district court rejected the defendant's federal habeas petition. In affirming, the Second Circuit noted that the focus of a joinder inquiry is on "only the consequences of joinder, over which the trial judge has much control, and not the joinder itself, which may render the trial fundamentally unfair." *Id.* The court held that the petitioner had made no showing of actual prejudice. *Id.* In addition, the court found that the trial court's instructions cured any potential prejudice. *Id.* at 378. It also found that "because the evidence with respect to each murder was distinct and easily compartmentalized, the risk of jury confusion . . . was significantly limited. *Id.* Nor did petitioner show that there was any improper spillover corroboration regarding the common witness's testimony. *Id.*

The facts here are substantially similar. While Burke points to the potential for prejudice, he is unable to show any actual prejudice. Although the trial judge did not give specific instructions regarding the independent nature of each of the charges, he did instruct the jury as to each element of each charge separately. And he instructed the jury that it could not consider propensity evidence as such but that it must specifically find each element of the charged crimes, as discussed above. In addition, the charges in this case were sufficiently isolated in time— indeed, approximately five years passed between the two murders, and another four years passed before the solicitation to murder. Therefore, Burke cannot make the showing that the state court's determination is contrary to, or an unreasonable application of, Supreme Court precedent.

## VI. Conclusion

For the reasons set forth above, Burke's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. As Burke has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

SO ORDERED.

s/NG

**NINA GERSHON**
**United States District Judge**

Dated: June 19, 2012
Brooklyn, New York